# National Bank of Phœnixville, Appellant, v. Bonsor.

*Banks and banking—Checks—Failure of consideration—Holder for value.*

1. In an action by a bank against the maker of a check who had stopped its payment, where the evidence shows a failure of consideration as between the maker and the payee who had deposited the check with the plaintiff bank, and also shows that the bank was not a holder for value to the full amount of the check, it is proper for the court to refuse to charge, by binding instructions, that the plaintiff is entitled to recover the full amount of the check.

2. When a bank makes advances or gives new credit on the faith of a check or other commercial paper which a customer has deposited for collection, and for which he has received credit in his account, it becomes entitled to a lien upon such paper and proceeds thereof for the amount thus advanced.

3. Where a bank accepts a check for collection, and gives a depositor credit for it, and the latter draws against his account to an amount which reduces the apparent balance below the amount of the check, the bank has a lien for the amount of the overdraft, and to that amount is a holder for value, and may recover to such extent against the maker of the check. This right is established by the Act of May 16, 1901, P. L. 194, sec. 27, relating to negotiable instruments.

Argued Oct. 15, 1908. Appeal, No. 61, Oct. T., 1908, by plaintiff, from judgment of C. P. Phila. Co., March T., 1905, No. 126, on verdict for defendant in case of National Bank of Phœnixville v. C. F. Bonsor & Company, Incorporated. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY and BEAVER, JJ. Reversed.

Assumpsit upon a check. Before CARR, J.

At the trial when Charles F. Bonsor was on the stand the following offer was made:

Mr. Porter: I offer to prove by this witness that this check was drawn to the order of the Schuylkill Valley Match Company; that it was afterwards stopped payment because the Schuylkill Valley Match Company were not entitled to the

money and Bonsor & Company did not owe them the money; to develop by this witness the contract between Bonsor & Company and the Schuylkill Valley Match Company and show in detail the financial relations which required the stopping of the check and all the general merits of the case.

Mr. Thompson: I object to that unless it is preceded by proof that the National Bank of Phœnixville was not a holder for value and that the National Bank of Phœnixville had notice of the equities between the parties before it became holder for value.

Objection overruled.

Exception noted for the plaintiff by direction of the court. [1]

Objections to similar offers were overruled. [2, 3]

Defendant presented this point:

That the court should direct a verdict for the plaintiff under all the evidence for the amount of the check, with interest from the date of the notice of nonpayment, December 20, 1904. *Answer:* Refused. [4]

The court charged as follows:

[In this case there is only one question of fact for you to decide, and that is whether or not the matches that were delivered after the spring of 1904 were up to quality. Upon that point there can be no doubt, because you have the testimony of Mr. Bonsor on his oath as to that, and the samples are before you, and the testimony of Hutchinson, as well as the testimony of Wheaton, and they say that it was admitted by the Schuylkill Valley Match Company that their goods were not up to the standard. Therefore, there can be no doubt in this case as to the proof of the fact.

The law is, if you believe that, then it is a proper defense in this case, and your verdict should be for the defendant.] [5]

[The Schuylkill Valley Match Company, being a depositor in the plaintiff bank, and the check in suit having been deposited in due course, the presumption of law is that the check was taken for collection, in the absence of a special agreement. There is no proof of any special agreement on the subject, and if you believe there was the failure to deliver up to the standard

which they contracted to deliver, that is a good defense in this case.] [6]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1–3) rulings on evidence, quoting the bill of exceptions; (4–6) above instructions, quoting them.

*Samuel W. Pennypacker*, with him *J. Whitaker Thompson*, for appellant.—It has long been settled that where a banker advances money to another, he has a lien upon all the papers that are in his hands for the amount of the balance, unless such securities were delivered to him under a particular agreement: Bank of the Metropolis v. New England Bank, 42 U. S. 234; Logan v. Smith, 8 W. N. C. 102; First Nat. Bank of Clarion v. Gregg, 79 Pa. 384; Erisman's App., 1 Pa. Superior Ct. 144; Balbach v. Frelinghuysen, 15 Fed. Repr. 675; Hazlett v. Commercial Nat. Bank, 132 Pa. 118; German Nat. Bank v. Farmers' Deposit Nat. Bank, 118 Pa. 294.

When an advance has been made which creates an indebtedness to the bank by the depositor, the bank has a lien on all business papers of the depositor held by it until the indebtedness is discharged: 1 Morse on Banks and Banking (4th ed.), sec. 324; U. S. Bank v. Macalester, 9 Pa. 475; Champion v. Gordon, 70 Pa. 474; Phelan v. Moss, 67 Pa. 59; Garrard v. Haddan, 67 Pa. 82.

*W. W. Porter*, of *Porter, Foulkrod & McCullagh*, for appellee. —It has been held in New York and some other jurisdictions, that the fact that the bank has permitted its depositor to draw against a check on which payment has not as yet been ascertained constitutes the bank a holder for value pro tanto, to the amount of the advance. This view is disapproved by the best text-book writers, who show that such advances in no way alter the status of the parties with respect to the ownership of the check: Daniel on Negotiable Instruments, sec. 340b; Ice Co. v. State Nat. Bank, 1 McGloin (La.), 181; 2 Bolles on Banking, 530; Morse on Banking (4th ed.), sec. 583.

If the bank permits its depositor to draw against a check

taken as a deposit before payment is ascertained thereon, it does so as a matter of favor and upon the credit of the depositor, and obtains a lien on the check, or its proceeds, for the amount so advanced by it, the title to the check remaining in the depositor: Hazlett v. Commercial Nat. Bank, 132 Pa. 118; Rapp v. National Security Bank, 136 Pa. 426.

OPINION BY PORTER, J., February 26, 1909:

The defendant corporation gave to the Schuylkill Valley Match Company its check, dated December 16, 1904, upon the Southwark National Bank of Philadelphia for the sum of $700, payable to the order of the Schuylkill Valley Match Company. The Schuylkill Valley Match Company was a depositor of the National Bank of Phœnixville and, on December 17, 1904, which was Saturday, it deposited this check, with its general indorsement, with said bank and received credit for the amount thereof in its account, and at the close of business on that day the balance due the depositor, including the $700 check, was $982.49. The Phœnixville Bank sent the check to its Philadelphia correspondent for collection, and on Monday, December 19, 1904, the check was passed through the clearing house; the defendant had notified the Southwark National Bank not to pay, and the check was protested for nonpayment. The plaintiff bank received notice of such protest on Tuesday, December 20. The plaintiff bank had, on December 19, 1904, before receiving notice of the dishonor of the check, paid checks of the match company upon the account to the amount of $381.71, leaving a balance of $600.78 at the close of business on that day, including in the account as a credit of the depositor the $700 for the check in question. If the credit for this $700 check which had been entered in the account of the depositor is to be charged back, then the account on December 19, 1904, was overdrawn to the amount of $99.22, and there is no evidence in this case that this overdraft was ever made good to the bank. The Phœnixville National Bank brought this action upon the check against the maker thereof, who set up as a defense that there had been a failure of consideration, as between the maker and the drawee of the check, and that the plaintiff was not a

holder for value. There was a verdict and judgment in favor of the defendant in the court below and the plaintiff appeals.

The plaintiff made out a prima facie case, by the presentation of the check with its indorsement and the certificate of protest for nonpayment; the burden was therefore upon the defendant. The defendant undertook to meet that burden by proving a failure of consideration as between the maker and drawee of the check, and that the plaintiff was not a holder for value. The evidence which is the subject of the first three specifications of error was directly relevant to the facts in dispute, and those specifications are overruled. The evidence produced would have warranted a finding that the consideration for which the check was given had wholly failed and that the plaintiff bank was not a holder of the check in due course and for value, to the full amount thereof; the request of the plaintiff for binding instructions that it was entitled to recover the full amount of the check, with interest, was therefore properly refused, and the fourth specification is dismissed.

The fifth and sixth specifications of error may be considered together. The check had been given in payment for matches bought by Bonsor & Company from the match company, which were to be up to a certain standard. The defendants produced evidence, which, if believed, would certainly have warranted a finding that the matches actually delivered were worthless, and that there had been a failure of consideration. The learned judge of the court below instructed the jury, in effect, that there was but one question in the case, that if they believed there had been a failure to deliver the matches required by the contract, that the matches actually delivered were not of the quality required, their verdict must be for the defendant. The charge, in explanation of the position thus taken, contains this language: "The Schuylkill Valley Match Company, being a depositor in the plaintiff bank, and the check in suit having been deposited in due course, the presumption of law is that the check was taken for collection, in the absence of a special agreement. There is no proof of any special agreement on the subject, and if you believe there was the failure to deliver up to the standard which they contracted to deliver, that is a good defense in this

case." This eliminated from the case any question of the right of the plaintiff bank, as a holder for value, to recover the amount which they had advanced to the match company upon the faith of the check, which it had deposited in its account.

When a bank credits a customer with the amount of a check, indorsed by him in blank, deposited in his account, the bank does not in the absence of a special agreement from this fact standing alone become a holder of the paper for value; the title to the check remains in the depositor. When such paper is dishonored the bank may charge it back to the depositor, without taking the steps necessary to hold him as an indorser. The relation arising from such a transaction, as between the bank and the depositor, is that the former becomes the agent of the latter for the purpose of collection: Hazlett v. Commercial National Bank, 132 Pa. 118; First National Bank of Clarion v. Gregg, 79 Pa. 384; Rapp v. National Security Bank, 136 Pa. 426; Morris v. First National Bank of Allegheny, 201 Pa. 160. The learned judge of the court below applied this rule in the present case, but in doing so lost sight of another rule applicable to the dealings of banks with their customers and to the rights which they acquire under the securities which come into their possession. When a bank makes advances or gives new credit on the faith of a check or other commercial paper which a customer has deposited for collection and for which he has received credit in his account, it becomes entitled to a lien upon such paper, and the proceeds thereof, for the amount thus advanced : United States Bank v. Macalester, 9 Pa. 475; First National Bank of Clarion v. Gregg, 79 Pa. 384; Logan et al. v. Smith et al., 8 W. N. C. 102; Bank of the Metropolis v. New England Bank, 42 U. S. 234; Davis v. Bowsher, 5 T. R. 488. When the plaintiff bank, on December 19, 1904, paid checks of its depositor, the match company, to an amount which reduced the apparent balance below $700, it is fair to presume that this extension of credit was based upon the state of its account, which included the very check now in question: Erisman's Appeal, 1 Pa. Superior Ct. 144. The plaintiff bank clearly had a lien upon the check for the amount thus advanced. We do not deem it necessary to consider what the effect of such a lien upon the

rights of the bank, in the check, might be in other jurisdictions, that effect in Pennsylvania is controlled by statute. The Act relating to negotiable instruments, approved May 16, 1901, P. L. 194, sec. 27, provides that: "Where the holder has a lien on the instrument, arising either from contract or by implication of law, he is deemed a holder for value to the extent of his lien," and sec. 191 thus defines the meaning of the word "holder:" "'Holder' means the payee or indorsee of a bill or note, who is in possession of it, or the bearer thereof." The uncontradicted evidence in the court below established that the plaintiff bank had made advances on this check to the amount of $99.22, and, if that evidence was believed, it was certainly entitled to recover that amount, with interest. The fifth and sixth specifications of error are sustained.

The judgment is reversed and a new venire awarded.