## Interstate Contracting Co., Inc., to use, v. Mager et ux. No. 1

*Sidney L. Krawitz,* for plaintiff.

*Clifton A. Cloud,* for defendants.

SHULL, P. J., September 15, 1943.—This matter comes before the court upon a rule to show cause why judgment should not be opened and defendants let into a defense.

In support of this petition, defendants urge (1) that the note upon which this judgment was entered is a nonnegotiable note, and (2) that the note upon which this judgment was entered was not taken in due course by the use-plaintiff in this judgment.

In support of the contention that this note is a non-negotiable instrument, defendants urge that the confession of judgment contained in it is such that under the law the note is nonnegotiable. The confession of judgment in this note is as follows:

"If any installment of this note is not paid when due the entire unpaid amount thereof shall immediately become due and payable, and if permitted by law, undersigned jointly and severally authorize any attorney at law to appear in any court of record in the United States for undersigned and confess judgment for such amount as may appear to be unpaid hereon at maturity, together with interest and 15 percent of the amount appearing unpaid hereon for collection and attorney's fees."

Paragraph 3 of section 2 of the Negotiable Instruments Law of May 16, 1901, P. L. 194, provides:

"The sum payable is a sum certain, within the meaning of this act, although it is to be paid: . . . (3) By stated installments, with a provision that upon default in payment of any installment or of interest, the whole shall become due. . . ."

To our mind, an authorization to enter judgment as it appears in this note is clearly an authorization to enter judgment after, and not before, maturity. A provision practically identical with the provision here was considered and passed upon by Judge Reno, now of our Superior Court, in the case of United States Guardian Corp. v. Sherr, 9 D. & C. 770, and it is our view that the provision here does not affect its negotiability. See Drey St. Motor Co., for Use, v. Nevling, 106 Pa. Superior Ct. 42, and International Finance Co. v. Magilansky et ux., 105 Pa. Superior Ct. 309.

It is further urged that, by reason of the fact that in the body of this note there appears "Authorized FHA 'late charges' (5c per $1.00, maximum $5.00) payable on any installment more than 15 days in arrears", this note is nonnegotiable. In this contention we can see no merit. Should we consider this mere surplusage, as urged by counsel for plaintiff, it would, of course, not affect the negotiability of this note; and, on the other hand, if it be considered as an integral part of the note, then this provision stands in exactly the same category as a provision relative to the payment of an attorney's fee and costs of collection. Relative to this latter provision, paragraph 5 of section 2 of the Negotiable Instruments Law of 1901 specifically provides:

"(5) With costs of collection or any attorney's fee, in case payment shall not be made at maturity . . .";

and it is our view that there should be applied to the clause appearing here the same principle which is applied by the legislature in enacting paragraph 5, sec. 2, aforesaid, and a note otherwise negotiable would not by reason of the provision here become non-negotiable. This provision merely gives to the payee alternate remedies should there be default in any payment falling due under the provisions of the note.

As to defendants' contention that this note was not taken in due course, and therefore is open to any de-

defense as against this use-plaintiff which they might have against the payee, and, in support of the contention that it was not taken in due course, that at the time the Hillside National Bank acquired this note there was credited by the bank the sum of $540 to the account of Interstate Contracting Company, citing in support of this contention Bank of Wesleyville v. Rose, 85 Pa. Superior Ct. 52, and New York Hotel Statler Co., Inc., v. Girard National Bank, 89 Pa. Superior Ct. 537, neither of these cases is in point. In both of them the controversy arose over a deposited check. The check was due at the time of the deposit, otherwise it could not be credited in due course to the account of the depositor; but checks, when due, if deposited, are in due course credited to the depositor though the check is actually in the position of being deposited for collection, notwithstanding such credit be given. In this case we are dealing with a negotiable note, purchased by the bank before maturity, and unless this note were actually purchased by the bank no credit would be given to the account of the payee or anyone else, and, to our mind, the very fact that credit was given to the account of the payee at the time the note was taken by the bank is the best evidence that the bank gave value for it and that, so far as this phase of the contention goes, the note was taken in due course.

These defendants further urge, in support of their contention that the note was not taken in due course, that the action of the bank in taking this note amounted, under the law, to a taking in bad faith for the reason that the said judgment note contained the following clause: "Authorized FHA 'late charges' (5c per $1.00, maximum $5.00) payable on any installment more than 15 days in arrears", and in this connection defendants urge that "the plaintiff bank had knowledge of sufficient facts at the time of taking the note to preclude it from being a holder in due course,

due to the fact that the note gave notice that it was to be negotiated under the rules and regulations above referred to; that with this knowledge the plaintiff bank should have required from defendants or the Interstate Contracting Co., Inc., the borrower's completion certificate and dealer contractor/applicator statement, especially since the plaintiff bank admits it had knowledge of the consideration for the said note, which was the contract between defendants and the Interstate Contracting Co., Inc., for the re-siding of defendants' house. In this connection the plaintiff bank frankly admits that it not only did not know at the time the note was purchased whether the contract had been completed, but did not even go into the question of completion of the contract". We are not impressed with the soundness of this argument, for we cannot view the sentence complained of to be such that, when the note before its maturity was presented to the bank for purchase, this sentence would, per se, put a bank on notice and under the necessity of making inquiry to ascertain whether or not the payee had satisfactorily completed his contract, even though the consideration in the note be to cover the price designated for the completion of the work covered by the contract. The Interstate Contracting Co., Inc., was known to this bank, being a customer there; the bank is a dealer in negotiable securities; the note upon which this judgment was entered is a negotiable instrument; the bank purchased the note in due course for value; and "To defeat the rights of one dealing with negotiable securities it is not enough to show that he took them under circumstances which ought to excite the suspicion of a prudent man and cause him to make inquiry, but that he had actual knowledge of an infirmity or defect, or of such facts that his failure to make further inquiry would indicate a deliberate desire on his part to evade knowledge because of a belief or fear that inves-

tigation would disclose a vice in the transaction. This test, that of good faith with respect to negotiable instruments, is prescribed alike at common law, by the Negotiable Instruments Law of 1901, P. L. 194, and by the Uniform Fiduciaries Act of 1923, P. L. 468: *Phelan v. Moss*, 67 Pa. 59; *Union Bank & Trust Co., v. Girard Trust Co.*, 307 Pa. 488, 500, 501, 161 A. 865, 868, 869; *Davis, Trustee, v. Pennsylvania Company*, 337 Pa. 456, 459, 460, 12 A. 2d 66, 68, 69": First National Bank of Blairstown v. Goldberg et al., 340 Pa. 337, 340.

For the reasons above set forth the rule to show cause why the judgment should not be opened and defendants let into a defense should be discharged.

And now, September 15, 1943, rule to show cause why judgment should not be opened and defendants let into a defense is discharged at the cost of petitioners.