## M. J. Erisman, Appellant, *v.* The Delaware County National Bank.

*Banks and banking—Deposits—Trust funds—Liability of bank.*

In the application of the general rule of equity as to the right to follow trust funds so long as they can be traced in spite of transmutation of form or change of possession, it is uniformly held that the true ownership of a fund deposited in bank may be proved to be in another than the person in whose name the deposit is made, but whether the bank is chargeable to the true owner must depend upon the circumstances of the case.

*Limitations on right of true owner to recover.*

Where the depositor could recover a bank deposit in an action at law, if he were the true owner, the latter can recover in his own name, by an action for money had and received.

*Accommodation paper—Misappropriation—Without notice.*

The maker of accommodation paper cannot, as against a third person who, without notice of the equities between the parties, has taken it in payment of an antecedent debt, set up as a defense, that it was misappropriated by the payee.

*Right to follow misappropriated trust funds—Intervening equities.*

The right to follow trust funds which have been misappropriated is a valuable one, but all the authorities, including the cases cited by the appellant, agree in holding that a recovery will not be allowed in such case to the prejudice of the superior rights of innocent third parties. Where a bank has made advances or extended credit on the faith of the deposit, without notice that it belongs to another than the depositor, its rights and equities are superior.

Argued Dec. 3, 1895. Appeal No. 44, Nov. T., 1895, by plaintiff, from judgment of C. P. Delaware Co., March T., 1894, No. 64, directing verdict for defendant. Before Rice, P. J., Willard, Beaver, Reeder, Wickham, McCarthy and Orlady, JJ. Affirmed.

Assumpsit to recover $300, the amount of a check alleged to have been deposited with defendant as trust funds to use of plaintiff. Before Clayton, P. J.

The facts appear from the following extract from the opinion of the court below dismissing plaintiff's motion for a new trial.

On August 28, 1893, A. H. Tyson gave the plaintiff his

check for $400 on the Delaware County National Bank, the defendant, payable September 14, 1893.

September 12, 1893, Tyson informed the plaintiff that he could not pay the check when due, and requested the plaintiff to provide for it.   On the same day the plaintiff mailed to Tyson a check for $300, in the usual form, with the understanding between them that the said sum was to be deposited by Tyson so as to increase his account sufficiently to enable him to have funds enough in bank to pay the $400 check of the plaintiff.   When the $400 check was presented for payment, the $300 check had not been deposited, and the account of Tyson had been overdrawn $74.75.   The $400 check was therefore laid aside.   Subsequently on the same day, Tyson deposited cash and checks amounting to $925, including this $300 check.

On the same day checks were paid amounting to $87.00, and notes were discounted to the amount of $744.56.   It was also discovered on this day that a draft for $1,100, which had been credited to Tyson's account as cash had been protested.   In fact, therefore, when the $300 check was deposited and the $400 check presented for payment, the said Tyson was indebted to the bank $1,174.75.

At that time there was no suspicion of Tyson's insolvency.   The bank took his memorandum check for the protested draft, which was to have been made good the next day.   It is admitted that Tyson's account had been overdrawn, and that his debt to the bank is largely in excess of this $300 check.   It is also admitted that the bank had no notice of the secret trust under which Tyson received the $300 check until a full month after the deposit of the check and after Tyson had received credit for it, and not until after new notes had been discounted and checks paid.

*Errors assigned* were binding instructions for defendant.

*E. H. Hall*, for appellant.—A trust existed to appropriate the $300 to the payment of the $400 check, and in default of such appropriation, the money belonged to the plaintiff and having shown it in the hands of the defendant bank, the plaintiff is entitled to recover: Englar v. Offutt, 70 Md. 78.

If a trustee has deposited his beneficiary's money in a bank

146        ERISMAN'S APPEAL.

Arguments—Opinion of the Court.        [1 Super. Ct.

to which he owes money, and the bank in ignorance of the trust ownership, applies such deposit to the payment of his debt, such application will not stand, and the fund, if traced, may be reclaimed by the cestui que trust: Morse on Banks and Banking, (3d edition) sec. 590, citing Cook v. Tullis, 18 Wall. (U. S.) 332; Buttnett v. First National Bank, 38 Mich. 630.

The fund thus wrongfully deposited by the trustee is in a situation analogous to property that has been stolen and may be followed by its owner wherever found: Am. & Eng. Ency. of Law, vol. 37, page 258. It is claimed that this position is supported by Stair v. Bank, 55 Pa. 364; Bank v. Gregg & Co., 79 Pa. 384; Beach on Modern Equity Jurisprudence, sec. 281.

*W. B. Broomall*, for appellee.—The bank, having no notice of the alleged trust effecting the deposit extended new credits to the depositor after a deposit of the money, and would now suffer a delay induced by the depositor's apparent ownership : Bank v. Gregg, 79 Pa. 384; Hackett v. Reynolds, 114 Pa. 328.

OPINION BY RICE, P. J., January 20, 1896 :

In the application of the general rule of equity as to the right to follow trust funds so long as they can be traced in spite of transmutation of form or change of possession, it is uniformly held that the true ownership of a fund deposited in bank may be proved to be in another than the person in whose name the deposit is made, but whether the bank is chargeable to the true owner must depend upon the circumstances of the case : Stair v. York Nat'l Bank, 55 Pa. 364. Where the depositor could recover it in an action at law, if he were the true owner, the latter can recover in his own name, by an action for money had and received : Frazier v. Erie Bank, 8 W. & S. 18; Stair v. York Nat'l Bank, 55 Pa. 364; Farmers' and Mechanics' Nat'l Bank v. King, 57 Pa. 202. Whether the bank will be protected against a suit by the cestui que trust, when, in the usual course of business and without notice of the secret trust, it has credited the deposit upon the overdrawn account of the depositor or with his consent has charged against it a protested bill upon which the depositor is liable to the bank is one of the questions raised in this case, but it is not the only one. There

was nothing on the face of the plaintiff's check to indicate that it was given for any special purpose, and it is not seriously claimed that there was anything to put the bank upon inquiry. After the bank had credited it to Tyson, the apparent owner, it discounted for him several notes upon which he was indorser, and credited him with the proceeds, and honored his checks for more than the amount of the deposit in question. It appears further, that, some days before, Tyson had deposited for collection a sight draft on Newton and Gillette and had received credit for it as cash. After the plaintiff's $300 check was deposited, the bank received notice that the draft had been protested two days before. Tyson thereupon assented to a memorandum check being made to take up the draft—which was equivalent to giving his own check to the bank for the amount—and this was charged against his account. At the close of the day's transactions his account was overdrawn to the extent of $126$\frac{16}{100}$. Although the draft was not actually surrendered to Tyson the effect of the transaction was to extinguish his liability to the bank upon it, by payment. Concede that the proceeds of the plaintiff's accommodation check were used for the purpose, and that, as between Tyson and the plaintiff, this was a misapplication of the fund; it is also undisputed that the bank had no notice that Tyson did not have authority to use the check precisely as he did use it until nearly a month afterwards.

The maker of accommodation paper cannot, as against a third person who, without notice of the equities between the parties, has taken it in payment of an antecedent debt, set up as a defense, that it was misappropriated by the payee: Bardsley v. Delp, 88 Pa. 420. See also Stedman v. Carstairs et al., 97 Pa. 234. We cannot see why this principle would not protect the bank against the plaintiff's suit. Even if it does not strictly apply, and assuming that the bank's right of action against Tyson revived when it received notice that Tyson had misappropriated the check, still the fact remains that the bank had been induced by Tyson's apparent ownership of, and right to use the fund for general purposes, to forbear taking any measure to enforce its right, to suffer delay which might be very serious in the case of a debtor in failing circumstances. It seems too plain for argument, that the deposit of the plaintiff's $300 check, gave or assisted in giving to Tyson a credit which entered into

all of the subsequent transactions between him and the bank. Or, as the learned judge who tried the case well expresses the same idea, "It is fair to presume that in the usual course of banking, the extension of credit was based upon the state of his account, which included the plaintiff's money in his apparent ownership." It is to be observed also, that the plaintiff had put it in the power of Tyson to effect a result which the bank could not have prevented by the exercise of any business vigilance, and where one of two innocent persons must suffer loss, it ought to fall on him who has put it in the power of the third party to obtain a false credit. The right to follow trust funds which have been misappropriated is a valuable one, but all the authorities, including the cases cited by the appellant, agree in holding that a recovery will not be allowed in such case to the prejudice of the superior rights of innocent third parties. Where a bank has made advances or extended credit on the faith of the deposit, without notice that it belongs to another than the depositor, its rights and equities are superior.

We cannot see that the defendant's failure to honor the Tyson $400 check to the plaintiff, entered into the question; for (1) that is not the cause of action alleged in the declaration; (2) the holder of an unaccepted check or draft cannot maintain thereon an action in his own name against the drawee: Maginn v. Dollar Savings Bank, 131 Pa. 362; (3) the refusal to pay the check was entirely legitimate. Tyson did not have money enough in bank to pay this check and the other checks he gave and the draft upon which he was liable; so far as the bank knew he had a perfect right to appropriate the whole fund to payment of the latter, and it was not fraudulent on the part of the bank to permit it.

There being no disputed questions of fact, and the equities of the bank being superior to those of the plaintiff, the court properly gave binding instructions.

Judgment affirmed.